JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

PHILIP J. KEARNEY (CSBN 114978)
KYLE F. WALDINGER (ILSB 6238304)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Facsimile: (408) 535-5066

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE THE EXTRADITION OF PIERRIE ANTOINE BATE, <br>   a/k/a  Peirre Bate, <br>   a/k/a  Pierre Antonio Bate, <br>   a/k/a  Pierrie Bate, <br>   a/k/a  Pierre Antione Bate | No. CR 08-90409 MISC (PVT) (JW) <br><br> UNITED STATES' MEMORANDUM RE: AVAILABILITY OF BAIL |

     The United States hereby files this memorandum regarding the availability of bail in this matter. As set forth in more detail below, bail is available in extradition matters only in "special circumstances." The United States is not aware that any such special circumstances exist here.

## FACTUAL BACKGROUND

     This case involves the request by the Government of the United Kingdom to the United States for the extradition of Pierrie Antoine Bate. The charges for which the United Kingdom seeks extradition are burglary with the intent to rape, indecent assault, and burglary. The case is of importance to the Government of the United Kingdom and bears on the United States' foreign policy interests, specifically, its ability to comply with its obligations under the outstanding extradition treaty with the United Kingdom.

**A.**    **Charges Pending Against Bate in the United Kingdom.**

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)

According to the information provided by the United Kingdom, a warrant for the arrest of Pierrie Antoine Bate is outstanding in the United Kingdom for the crimes of burglary with intent to rape, indecent assault, and burglary, crimes covered and punishable under sections 9(1)(a) and 9(1)(b) of the Theft Act of 1968, and section 14(1) of the Sexual Offences Act of 1956. On January 17, 2008, a District Judge in Magistrate's Court in the City of Westminster, England issued a no bail arrest warrant for the arrest of the accused Pierre Antione Bate.

**B.     The Facts of the Case.**

As set forth in formal papers presented by the United Kingdom, in the early morning hours of October 3, 1995, a 44 year old woman named Janet Dobson was asleep in her London home. Ms. Dobson awoke to find a man on her bed supporting himself with one arm and masturbating over her with the other. After the man ejaculated on her bed sheets, Ms. Dobson shouted at him to leave. The intruder unsuccessfully attempted to leave through the locked front door, then escaped through a kitchen window. After notifying the police, Ms. Dobson inventoried her belongings and found £200 and three credit cards missing.

Police who responded to the scene seized the bed sheet as evidence, and lifted a number of finger and palm prints. DNA analysis of semen found on the bedspread failed to produce a complete genetic profile, and no matches were made to the suspect finger and palm prints. The investigation thereafter closed. In 1996, Mr. Bate was convicted of theft offenses in the United Kingdom, and as a result, his fingerprints were taken and a sample of his DNA was input into the National DNA database.

Between 2004 and 2007, a cold case analysis was performed on the 1995 crime at the Dobson home. The semen on the bed sheet was re-analyzed using a DNA amplification technique; the genetic profile developed was found to match that of Mr. Bate. Fingerprints on Ms. Dobson's teapot, and the drainpipe outside her kitchen window were matched to Mr. Bate. A palm print on the inside of her kitchen window frame was also identified as belonging to the accused.

Burglary, burglary with the intent to rape, and indecent assault are all extraditable offenses  under Article 2, Item 1, of the Extradition Treaty between the United States of America

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)                -2-

and the United Kingdom of Great Britain and Northern Ireland.

## DISCUSSION

**A.      Standards Governing Bail in Extradition Proceedings.**

It is well established that bail is not generally available in extradition cases and that, if bail is granted, it should only be when "special circumstances" exist. As set forth in more detail below, "[u]nlike the situation for domestic crimes, there is no presumption favoring bail [in international extradition]. The reverse is rather the case." Matter of Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986) (quoting Beaulieu v. Hartigan, 554 F.2d 1, 2 (1st Cir. 1977)); see also Matter of Requested Extradition of Kirby, 106 F.3d 855, 858 (9th Cir. 1997) ("As the United States points out, this presumption against bail [in extradition proceedings] is contrary to the presumption that favors bail in domestic prosecutions.") (citation omitted).

     1.      No Constitutional or Statutory Right to Bail.

There is no constitutional or statutory right to bail in extradition proceedings. As an initial matter, the Eighth Amendment to the Constitution requires only that bail, if granted, not be excessive.[1] Further, the Bail Reform Act and decisions involving pre-trial release apply only to criminal cases. In re Extradition of Mironescu, 296 F. Supp.2d 632, 634 (M.D.N.C. 2003) ("Because an international extradition proceeding is not a criminal case, the Bail Reform Act . . . does not apply.").

     2.      International Considerations Generally Counsel Against Granting Bail.

Although bail in extradition proceedings involves some of the same considerations as in ordinary criminal cases, it differs in one extremely significant respect: the international implications of a failure to deliver a fugitive. In re Extradition of Molnar, 182 F. Supp.2d 684, 686–87 (N.D. Ill. 2002). The reason for distinguishing granting release in extradition cases from federal criminal cases is that extradition cases involve an overriding interest in meeting treaty obligations. "As one court has put it, "[i]f the United States were to release a foreign fugitive

---

[1] A related claim, based on an asserted due process right to bail by aliens in deportation proceedings, has been rejected by a New York court. See Doherty v. Thornburgh, 750 F. Supp. 131, 135–38 (S.D.N.Y. 1990) (analyzing the concept and discussing the cases).

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)           -3-

pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." United States v. Taitz, 130 F.R.D. 442, 444 (S.D. Cal. 1990) (citation omitted).

Simply put, the international legal system depends wholly on the respect of its members for the obligations into which they freely enter. The axiom pacta sunt servanda — treaties must be obeyed — is thus the heart of the system. A nation that fails to perform a duty mandated by a treaty can justly be accused of subverting the system and may find itself receiving reciprocal treatment from its treaty partner.

Extradition treaties are written so that delivery of fugitives by the United States pursuant to an extradition request is not optional: if the requesting state meets the conditions specified in the treaty, the United States is obliged to deliver the fugitive. This obligation cannot be fulfilled if the fugitive skips bail after being released from custody. In forums throughout the world, the United States vigorously advocates extradition as a means to combat all forms of serious lawlessness.[2] Thus, the United States' ability to deliver fugitives pursuant to extradition requests is subject to special scrutiny worldwide and is of great importance to our national interest.[3]

Given the potentially serious consequences on the foreign relations of the United States and the inherent unreliability of fleeing felons, most courts will not grant bail to fugitives absent special circumstances. See United States v. Williams, 611 F.2d 914, 914–15 (1st Cir. 1979). Some courts characterize this reluctance as a presumption against bail for fugitives. See, e.g., United States v. Messina, 566 F. Supp. 740, 742 (S.D.N.Y. 1983). Whatever the name of the policy, it derives from a single source: the conviction that the interest of the United States in living up to its treaty obligations, coupled with the risk of flight inherent in all extradition cases,

---

[2] U.S. domestic law nevertheless recognizes an exception under which the Secretary of State may deny extradition for compelling reasons even when the treaty's conditions have been fulfilled. See Escobedo v. United States, 623 F.2d 1098, 1105 n.20 (5th Cir. 1980).

[3] Indeed, Mexico recently agreed to extradite a number of reputed "drug lords" to the United States. See Hector Tobar, Extraditions make a point, L.A. Times, 1/21/07, at 4, available on Westlaw at 2007 WNLR 1188173.

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)          -4-

1 outweighs any factors that might be advanced in favor of release in all but the most unusual
2 cases. As set forth in more detail in the next section, even if a fugitive is not considered a flight
3 risk by the United States, the fugitive must establish the existence of "special circumstances" that
4 would warrant his release. Molnar, 182 F. Supp.2d at 686 (citing Salerno v. United States, 878
5 F.2d 317 (9th Cir. 1989)).

        3.    "Special Circumstances" are Required for a Fugitive to be Released on Bail.

The general unavailability of release in extradition cases has been authoritatively settled by the United States Supreme Court since 1903. In Wright v. Henkel, 190 U.S. 40, 63 (1903), the Supreme Court held:

> Not only is there no statute providing for admission to bail in cases of foreign extradition, but § 5270 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3591), is inconsistent with its allowance after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."
>
> * * *
>
> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination.

Id. at 61–62; see also Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989) ("There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail.") (quoting Wright v. Henkel, 190 U.S. 40, 63 (1903)); see also Kirby, 106 F.3d at 858 (same). "Special circumstances" are "'only [] the most pressing circumstances, and when the requirements of justice are absolutely peremptory.'" United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (L. Hand, J.)). Despite the age of the Wright decision, it still provides the standard for admission to bail pending extradition. Even though laws have been updated and procedures re-codified since 1903, see 18 U.S.C. § 3181 et seq., there still is no statute that admits an extraditee to bail, and the

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)        -5-

requirement of a showing of "special circumstances" is still mandated by Wright and its progeny.

The "special circumstances" doctrine creates a presumption contrary to the presumption operating in domestic prosecutions, where, as noted above, pre-trial bail is the favored course. Beaulieu, 554 F.2d at 2 ("Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case."). As noted above, the anti-bail presumption in extradition cases is grounded in the strong foreign policy interests inherent in the extradition relationship between the United States and its treaty partners. If a domestically-charged person is released and flees before trial he thwarts the court's ability to enforce our criminal laws. That potential harm is balanced against his presumption of innocence. In this matter, however, Mr. Bate is wanted by the Government of the United Kingdom based on an outstanding arrest warrant there. Consequently, there is significantly greater potential harm if he flees before his extradition hearing can be held. Bate's flight would defeat the United Kingdom's ability to enforce its laws, subject the United States to embarrassment, and damage our foreign policy interests by rendering us unable to meet our treaty obligation to extradite him to the United Kingdom. See, e.g., Wright v. Henkel, 190 U.S. at 62; In re Klein, 46 F.2d 85, 85 (S.D.N.Y. 1930) (noting the "grave risk of frustrating the efforts of the executive branch of the government to fulfill treaty obligations").[4]

Although the case law is somewhat unclear as to what constitutes "special circumstances," it is clear that such "special circumstances" are limited to extraordinarily rare situations, or, in the words of Judge Learned Hand, "the most pressing circumstances and when

---

[4] The continued vitality of the "special circumstances" test has been confirmed in cases such as Hu Yau-Leung v. Soscia, 649 F.2d 914 (2d Cir.), cert. denied, 454 U.S. 971 (1981). In that case, the Court of Appeals for the Second Circuit held:

> The government also asks us to review and vacate the district court's grant of Hu's release on bail. We agree with the government that the standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial. Wright v. Henkel, supra, 190 U.S. at 62, 23 S. Ct. at 786; Beaulieu v. Hartigan, 554 F.2d 1 (1st Cir. 1977). We recognize that, because of the treaty obligations of the United States, there is a presumption against bail in the former situation, and only "special circumstances" will justify bail. Wright v. Henkel, supra; United States v. Williams, 611 F.2d 914 (1st Cir. 1979); Beaulieu v. Hartigan, supra; In Re Mitchell, 171 F. 289 (S.D.N.Y. 1909).

1  the requirements of justice are absolutely peremptory." In re Mitchell, 171 F. 289, 289 (S.D.N.Y.
2  1909). On the government's appeal, the Ninth Circuit has underscored the principle that
3  fugitives arrested in connection with foreign extradition requests should be denied bail absent
4  "special circumstances." United States v. Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992).

5      Individuals wanted for extradition often cite the need to consult with counsel, gather
6  evidence, and confer with witnesses in preparation for their hearing as facts supporting a "special
7  circumstances" finding. However, these needs do not support a motion for release as they are
8  "important" but "not extraordinary," since "all incarcerated defendants need to do these things."
9  United States v. Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992); see also Koskotas v. Roche, 931
10 F.2d 169, 175 (1st Cir. 1991) (need to assist in preparation of defense insufficient to justify
11 release). Other factors that do not amount to "special circumstances" include: (1) an
12 unblemished record and the ability to post a significant bond; (2) the fugitive being a highly
13 trained doctor available to administer care to the public; (3) the discomfort of sitting in jail; (4)
14 the need to consult with one's attorney about pending civil litigation, the present extradition
15 hearing, and severe financial and emotional hardships; (5) advanced age or infirmity; (6) the need
16 for a special diet; (7) no credit for time served; (8) financial or family hardship; or (9) the
17 complicated nature of extradition proceedings. Kirby, 106 F.3d at 863; Russell, 805 F.2d at
18 1217; Molnar, 182 F. Supp.2d at 688.

19     Courts have found special circumstances to exist where fugitives have shown a high
20 probability of their success in the extradition hearing, a serious deterioration of health, an
21 unusual delay in the proceedings, reason to believe the charges cannot be supported under the
22 Treaty, the availability of bail for a crime charged in the requesting country, and a combination of
23 other factors (including the general "uniqueness" of a case). Molnar, 182 F. Supp. 688–89;
24 Kirby, 106 F.3d at 864–65.

## CONCLUSION

26     For all of the reasons set forth above, the United States will respectfully request that this
27 Court deny any motion made by Bate for release.

28 DATED: August 14, 2008                        Respectfully submitted,

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)        -7-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
PHILIP J. KEARNEY
KYLE F. WALDINGER
Assistant United States Attorneys

USA'S MEMORANDUM RE: BAIL
CR 08-90409 MISC (PVT) (JW)                    -8-